UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON ELAINE HILL,

              **Plaintiff,**              **CIVIL ACTION NO. 8-CV-14382**

      **vs.**                  **DISTRICT JUDGE BERNARD A. FRIEDMAN**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**    **RECOMMENDATION:**    This Court recommends that Defendant's Motion for Summary Judgment (docket no. 16) be GRANTED, that Plaintiff's Motion for Summary Judgment (docket no. 11, 11-2) be DENIED, and the instant complaint DISMISSED as there is substantial evidence on the record that Plaintiff retains the residual functional capacity to perform a limited range of light work.

***

**II.**    **PROCEDURAL BACKGROUND**

      Plaintiff filed an application for disability and Disability Insurance Benefits on September 27, 2005, alleging that she had been disabled and unable to work since March 8, 2005 due to a knee injury with left-sided weakness, gout, arthritis, rheumatism and degenerative eye disease. (TR 16, 25, 56-58, 90). Plaintiff's application was claim was initially denied. (TR 25-31). Following a January 16, 2008 hearing, Administrative Law Judge Ethel Revels ("ALJ") found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability at any time from March 8, 2005 through the date of the ALJ's April 24, 2008 decision.

1

(TR 16, 24, 350).  The Appeals Council denied Plaintiff's Request for Review.  (TR 5-7).  Plaintiff commenced the instant action for judicial review.  The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.    Plaintiff's Testimony and Reports

Plaintiff was fifty-one years old at the time of the hearing.  (TR 354).  Plaintiff testified that she has not worked since August 14, 2005 when she was a patient care associate technician in a hospital.  (TR 354).  Plaintiff has a high school education and two years of college education without obtaining a degree.  (TR 373).  Plaintiff was a certified nursing assistant.  (TR 374).

Plaintiff testified to a series of back injuries after which she returned to work each time.  The first back injury occurred in July 2003 after which she was off work for a couple of days.  (TR 356).  Plaintiff injured her foot in 2004.  (TR 356).  Plaintiff stopped working after a fall in August 2005 in which she injured her knee.  (TR 357).  Plaintiff testified that she had a combination of injuries that caused weakness on her left side, including a knee injury, gout and rheumatism.  (TR 357).  Plaintiff also testified that she has degenerative retina eye disease.  (TR 357).  Plaintiff was involved in a motor vehicle accident in April 2006 which resulted in a herniated disc in her neck and constant neck pain, shoulder pain and frequent headaches.  (TR 358).  Plaintiff testified that she has gout attacks which cause her feet, joints and knees to swell up with pain and weakness and she can hardly walk.  (TR 366).

Plaintiff testified that she was depressed following her injuries at work because she believed the people there were unsympathetic to her situation.  (TR 359).  Plaintiff testified that she is "not

2

as happy around people anymore," she is withdrawn, takes medication to help her sleep and during the day for her depression, constantly watches television, has feelings of worthlessness, does not have the energy she used to have and is not eating as she should due to her mood. (TR 361-62). She complains that she cannot concentrate like she used to and she has to "think two and three times" before she does something "to make sure it's the right thing to do." (TR 362). Plaintiff testified that she does not have the insurance or money necessary to have psychotherapy and she was not seeing a psychiatrist or therapist at the time of the hearing. (TR 363). She testified that she would think of suicide if it were not for her daughter. (TR 364).

Plaintiff testified that she could not do her prior work, yet she believed there was some work she could do although she was unable to identify it. Plaintiff testified that she could "probably hold a job down" but she thought she would have a problem with attendance due to her medical condition. (TR 366). Plaintiff testified that even if the job did not require the lifting that her prior job required, she would mentally be able to work around other people on a daily basis only two or three times per week. (TR 366).

Plaintiff's daughter completed a third party Function Report and reported that Plaintiff does not do anything all day, she is unable to sleep and cannot focus and can only pay attention for five minutes. (TR 97-102). She reported that Plaintiff has problems getting along with "everyone." (TR 102). She reported that Plaintiff is able to prepare small meals, which she does two to three times per week, wash clothing for approximately three hours with reminders, use public transportation, go grocery shopping about twice a month for three hours and walk two or three blocks before she has to stop and rest for ten minutes. (TR 97-101). She reported that Plaintiff attends church once a week. (TR 101).

3

### B.   Medical and Record Evidence

Plaintiff reported to the emergency room on March 8, 2005 with complaints of neck pain, back pain and left shoulder pain.  (TR 158, 219-23).  Plaintiff reported that the pain started when she was lifting a heavy patient.  (TR 158).  Plaintiff was diagnosed with cervical strain, lumbar strain and possible rotator cuff injury.  (TR 158).  Plaintiff's strength was 5/5 throughout and her gait was normal.  (TR 159).  Plaintiff was given Indocin 50 mg. for pain and was instructed to follow-up with occupational health services for possible work restrictions.  (TR 159).

Plaintiff reported to the emergency room on April 11, 2005 with complaints of chest pain and ear pain.  (TR 161).  An EKG was normal and Plaintiff was given amoxicillin for otitis and Vicodin ES for pain and was discharged.  (TR 162).  Plaintiff reported to the emergency room on July 17, 2005 with complaints of a back strain which occurred when she was assisting a patient at work.  (TR 156, 217-18).  The doctor noted that Plaintiff had some paraspinal discomfort in the right lower back, but she was able to move all extremities with 5/5 strength, had a normal gait and no evidence of motor or sensory deficit.  (TR 157).  Plaintiff was given one dose of Valium as a muscle relaxer and was advised to take Tylenol for pain.  (TR 157).

Plaintiff reported to the emergency room on August 14, 2005 with complaints of right knee pain following a fall on steps at work.  (TR 150).  X-rays of the knee were negative for fracture or dislocation and showed that the joint spaces were well maintained, minimal spurring was seen in the tibial spine, there was joint effusion and soft tissues were unremarkable.  (TR 151-52). Plaintiff was prescribed Motrin 600 mg. and Maalox.  (TR 151).  A September 11, 2005 MIR of the right knee revealed "[l]ow signal intensity within the popliteal vein is suspicious for deep venous thrombosis," with a recommended clinical correlation, "[n]on enlarged popliteal lymph nodes" and mild prepatellar bursitis, small prepatellar knee effusion, "[p]rominent patellofemoral osteoarthritis

4

without significant involvement of the medial and lateral compartments," and "[f]ocal bone marrow edema along the medial facet of the patellar" which may be part of the osteoarthritic change. (TR 207). December 2005 x-rays of the right and left knees were negative. (TR 228). An April 18, 2006 bilateral lower extremity venous examination with Duplex ultrasound imaging and spectral Doppler analysis revealed "no evidence of acute or chronic deep vein thrombosis or superficial thrombosis identified within both lower extremities." (TR 226).

The transcript contains Plaintiff's treatment records with Leonard E. Ellison Jr., M.D., from May 2002 through November 2007. (TR 130-38, 251-346). Plaintiff's visits included complaints of multiple symptoms, including back pain, arthritic gout, pain in her chest, severe arthritis, depression and left sided weakness. (TR 130-38, 251-346). On September 19, 2005 Dr. Ellison prescribed Zoloft for Plaintiff's depression. (TR 138). He also noted lumbosacral radiculopathy and ordered an MRI. (TR 138). In November 2005 Plaintiff was taking medications Zoloft, Indocin, Colchicine, Celebrex, Neurontin and Flexeril. (TR 252). In November 2007 Plaintiff was taking medications Nasonex, Xanax, Somo, Vicodin and Lotrel. (TR 257). In 2005 when the doctor restricted Plaintiff from work from August 16, 2005 through September 19, 2005 due to anxiety/depression disorder and from September 19, 2005 through November 8, 2005 due to left sided lumbosacral radiculopathy, depression, anxiety and knee pain. (TR 253, 276).

Plaintiff treated with Dr. Irwin Lutwin from June 2006 through November 2006 following an April 2006 motor vehicle accident. (TR 229-50). In June 2006 Dr. Lutwin limited Plaintiff from performing employment, housework, caring for children or caring for her personal needs which involves bending, lifting, twisting and prolonged standing for the period of time from June 16 through July 16, 2006. (TR 249). The doctor also restricted Plaintiff from driving or performing any other means of transportation during this same period. (TR 247). Dr. Lutwin reevaluated

5

Plaintiff on August 10, 2006. (TR 239). Plaintiff continued to report neck pain, back pain and shoulder pain which she rated at a 7 on a scale of ten and restriction of motion. (TR 239). The doctor noted that Plaintiff reported that physical therapy and the medications were helping. (TR 239). Plaintiff's treatment plan was to attend physical therapy three times per week for four week and her medications were Flextra and Flexeril. (TR 240). The doctor noted that Plaintiff "was disabled from a prior work comp accident" and she needs help with housekeeping and driving. (TR 240). Dr. Lutwin noted upper extremity restrictions from August 9, 2006 through September 9, 2006 and again on September 8, 2006. (TR 238-46). At a September 12, 2006 reevaluation Plaintiff reported continued neck and shoulder pain. (TR 234). The doctor again restricted Plaintiff from "bending, twisting, lifting and prolonged standing" from October 13, 2006 through November 13, 2006 and from November 10, 2006 through December 10, 2006. (TR 229-32).

The record contains a Physical Residual Functional Capacity Assessment dated January 18, 2006 and completed by a medical consultant. (TR 180-87). The consultant concluded that Plaintiff was limited to lifting and/or carrying 20 pounds occasionally and ten pounds frequently, standing and/or walking about six hours in an eight-hour workday, sitting about six hours in an eight-hour workday, and was unlimited in pushing and/or pulling including the operation of hand and foot controls. (TR 181). Plaintiff was limited to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling and never climbing ladders, ropes or scaffolds. (TR 182).

On February 20, 2006 Plaintiff was examined by D.L. Newman, M.D., at the Detroit Institute of Physical Medicine and Rehabilitation. (TR 208-10). Dr. Newman noted that upon examination Plaintiff has "limitation of motion, painful motion and structural changes noted of degenerative disc disease on x-ray," and in her knees she had "limitation of motion, swelling, and structural changes."

6

(TR 210).  The doctor diagnosed "[t]raumatic myofascitis dorsolumbar spine musculature with precipitation or aggravation of degenerative disc disease L4-5 and L5-S1," "[t]raumatic internal derangement of the right knee with patellofemoral osteoarthritis," and "[a]nxiety/depression secondary to work-related issues."  (TR 210).  Dr. Newman noted that due to knee problems, right greater than left, Plaintiff is limited in "squatting, standing, prolonged walking and weightbearing." (TR 210).  Due to low back problems, Plaintiff is limited in "bending, lifting, twisting, turning, standing, walking, climbing, squatting and the like."  (TR 210).  Plaintiff was referred to an orthopedic surgeon for her knee.  (TR 210).

On September 14, 2005 Plaintiff underwent an Intake Assessment at Eastwood Clinics.  (TR 164-66).  The examining M.S.W. diagnosed Major Depressive Disorder (296.33), secondary dysthymia (300.4) and assigned a GAF of 44.  (TR 165).  The examiner noted that Plaintiff reported "a lot of problems" as an employee and reported ongoing political and personal conflicts.  (TR 164). The examiner noted that Plaintiff reported having been "written-up" in her job more than once and that she "appears to not trust her superiors."  (TR 164).  The examined noted that Plaintiff reported feeling depressed for over a year with crying spells, feelings of hopelessness and emptiness, suffering sleep disturbances and having job and financial stresses.  (TR 164). The examiner noted that Plaintiff was well dressed, her behavior was appropriate, she was cooperative yet depressed, she had no delusions, her thought process was coherent, she was oriented to time, place and person, her short and long-term memory were intact, her judgment and insight were fair and her impulse control and motivation were good.  (TR 164).

State agency examiner Atul C. Shah, M.D. performed a psychiatric evaluation on Plaintiff on January 13, 2006.  (TR 175).  Dr. Shah diagnosed Major Depressive Disorder, recurrent with psychotic features and partial remissions.  (TR 177).  His opinion is set forth more fully in the

analysis below.

A state agency consultant completed a Psychiatric Review Technique dated February 10, 2006 and concluded that Plaintiff suffers from Major Depression.  (TR 189-206).  The consultant concluded that Plaintiff has mild restrictions in activities of daily living, no difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and has had no episodes of decompensation.  (TR 199). The consultant concluded that Plaintiff has moderate limitations in the "ability to understand and remember detailed instructions" and the "ability to carry out detailed instructions."  The consultant noted that "claimant's allegations are not supported by medical evidence.  Her diagnosis is Major Depression, recurrent with psychotic features in partial remission.  Her adl is intact.  She has a 12th grade education and work experience. She is able to do simple, sustained, unskilled tsks (sic) with persistence."  (TR 205).

On April 20, 2007, J. Barry Rubin, D.O., performed a psychiatric evaluation on Plaintiff at the request of Plaintiff's counsel. (TR 211-16).  Dr. Rubin concluded that Plaintiff has Major Depression and assigned a GAF of 60. (TR 215).  Dr. Rubin's opinion is set forth in further detail in the analysis below.

### C.    Vocational Expert Testimony

The Vocational Expert (VE) testified that Plaintiff's past work as a patient care associate and nurse technician was semiskilled and classified as medium in exertion, but was performed by Plaintiff at the heavy to very heavy level of exertion.  (TR 373).  The transferable skills of the occupation are related to patient care and are not transferable to a position at less than a medium level of exertion. (TR 373).

The ALJ asked the VE to assume an individual with Plaintiff's age, education and work experience who needs work that does not require frequent bending, frequent climbing of stairs or

8

ramps, does not require frequent work with the general public and does not require stooping, kneeling, crouching, squatting, crawling, climbing ladders, scaffolds or ropes. (TR 375-76). The work must involve only simple, repetitive tasks due to moderate limitations in the ability to maintain concentration for extended periods of time due to pain and "moderate limitations in the ability to understand, remember and carry out detailed instructions due to depression." (TR 377). The work must allow for a sit/stand option and must not require prolonged standing or walking. (TR 377). Such an individual would be able to stand and walk six of eight hours per day and lift ten pounds frequently and twenty pounds occasionally. (TR 377).

The VE testified that such an individual could perform unskilled work at the light exertional level including assembler (approximately 3,200 jobs in Southeast Michigan), packer (approximately 1,000 jobs) and machine tender (approximately 1, 000 jobs). (TR 377). Such an individual could also perform unskilled sedentary work including assembler (approximately 1,000), sorter (approximately 1,100) and general office clerk (approximately 1,000). (TR 378).

The ALJ added to the hypothetical a further restriction that the individual could not perform repetitive twisting of the torso. (TR 378). The VE testified that this limitation would not have an effect on the jobs which she identified. (TR 378). The VE testified that her testimony was consistent with the Dictionary of Occupations Titles (DOT) and its companion publication SCO except with respect to the sit/stand option, which the DOT does not address. (TR 378).

In response to questioning by Plaintiff's attorney, the VE also testified that the jobs would be precluded by more than two absences per month. (TR 379). The jobs would also be precluded if an individual could not concentrate for over five minutes in maintaining attention to a task. (TR 379-80). If the individual had marked impairment in the ability to get along with everybody,

9

including friends, family, neighbors, supervisors and employees, it would preclude competitive employment.  (TR 381).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff had not engaged in substantial gainful activity since March 8, 2005, met the insured status requirements of the Social Security Act through December 31, 2011 and suffered from degenerative disc disease, osteoarthritis and depression, she did not have an impairment or combination of impairments that meets or medically equals the Listing of Impairments.  (TR 18-19).  The ALJ found that Plaintiff was not entirely credible and she retains the ability to perform a limited range of work at the light level.  (TR 19).  The ALJ concluded that there are jobs that exist in a significant number in the national economy that Plaintiff can perform.  (TR 23).

## V.    LAW AND ANALYSIS

### A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*,  resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

**B.     Analysis**

*1.     Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)     she was not presently engaged in substantial gainful employment; and

(2)     she suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. §  404.1520(a)-(f) (2009).  If  Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  *See id*. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her v. Comm'r*, 203 F.3d 388, 391 (6th Cir. 1999).  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

Plaintiff argues that the ALJ's denial of benefits is not supported by substantial evidence

11

because she did not properly consider opinions about Plaintiff's mental limitations including that
Plaintiff has a GAF of 45 and cannot complete a normal workday.  (Docket no. 11-2).  Plaintiff also
argues that the ALJ's findings with respect to Plaintiff's physical impairments are not supported by
substantial evidence.  Finally, Plaintiff alleges that the ALJ failed to analyze Plaintiff's impairments
in combination and revealed a bias by relying on evidence in the record which would "minimize
[Plaintiff's] physical problems."  (Docket no. 11-2).  Plaintiff asks the Court to reverse the ALJ's
decision for payment of benefits, or, in the alternative, remand the claim for further determination.
(Docket no. 11-2).

### 2.    *Whether Substantial Evidence Supports the ALJ's Findings With Respect to Plaintiff's Mental Impairments and Resulting Limitations*

Plaintiff argues that the ALJ's finding that Plaintiff suffers only mild to moderate functional
limitations as a result of her mental impairments is not supported by substantial evidence.  Plaintiff
argues that the state agency medical examiner "disabled" Plaintiff when he concluded that she has
a GAF of 45.  The Commissioner has prescribed rules for evaluating mental impairments.  *See* 20
C.F.R. § 404.1520a.  The Commissioner first determines whether there is a medically determinable
mental disorder specified in one of nine diagnostic categories.  *See id.*; 20 C.F.R. Pt. 404. Subpt. P,
App. 1 § 12.00A.  Thereafter, the Commissioner measures the severity of a mental disorder in terms
of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of
the deficits.  In evaluating Plaintiff's mental impairment, the ALJ concluded that Plaintiff has mild
limitations in her activities of daily living and social functioning and moderate limitations in
concentration, persistence or pace.  20 C.F.R. § 404.1520a.  The ALJ followed the technique set
forth in 20 C.F.R. section 404.1520a to evaluate mental impairments and incorporated those findings
into his written decision.  *See* 20 C.F.R. § 404.1520a(e)(2).  (TR 19, 21-22).

Plaintiff underwent a psychiatric evaluation on January 13, 2006 with Dr. Shah. (TR 175-78). The ALJ cited extensively to Dr. Shah's opinion. (TR 19, 21, 22). As the ALJ pointed out, Dr. Shah diagnosed Plaintiff with Major Depressive Disorder, recurrent with psychotic features and partial remission and assigned a GAF of 45. (TR no. 177). The ALJ pointed out that Plaintiff's GAF in both September 2005 and January 2006 was 45. (TR 22). The ALJ correctly pointed out that in April 2007 Dr. Rubin found that Plaintiff had a GAF of 60[1]. (TR 22, 211-16).

A GAF of 50-60 "indicates moderate symptoms or moderate difficulty in social, occupational or school functioning." *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 463 (6th Cir. 2006) (Claimant had GAF scores in the range of 21 to 60, with the majority of scores falling within the 50s and claimant was not precluded from a wide range of work or his prior work.). "While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate."); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 502 n.7 (6th Cir. 2006). ("A GAF score may help an ALJ assess mental RFC, but it is not raw medical data."). The ALJ did not err in failing to determine that Plaintiff was disabled despite a GAF score of 45.

Plaintiff also argues that she is disabled because Dr. Rubin found that she is markedly limited in the ability to "complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," markedly limited in the ability "to maintain attention and

---

[1] The Court notes that there is no allegation or evidence that either Dr. Rubin or Dr. Shah are treating physicians, therefore, while their opinions must be considered, they are not entitled to the controlling weight afforded under 20 C.F.R. § 404.1527(b), (d)(2).

concentration for extended periods" and moderately limited in the ability to "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances." (TR 11-2, 348). These opinions appear on a Mental Residual Functional Capacity Assessment form completed by Dr. Rubin on April 3, 2007. (Docket no. 348). The ALJ referenced Dr. Rubin's opinions in his decision. (TR 21-22).

The ALJ declined to adopt the findings that Plaintiff has marked limitations and pointed out that the record supports only mild to moderate functional limitations. (TR 22). The ALJ noted that Plaintiff's improved mental condition was reflected in the GAF scores which increased from September 2005 and January 2006 to April 2007. (TR 22). The ALJ pointed out that Dr. Rubin assigned a GAF of 60, which indicates "moderate" symptoms, despite his findings in limited areas that Plaintiff has marked limitations. *See Nelson*, 195 Fed. Appx. at 463.

The ALJ noted Dr. Rubin's findings during the "formal part" (his written report) of her mental status examination that Plaintiff was alert and oriented to person, place and time and recent, remote and immediate memory were intact despite Plaintiff being able to repeat "only a series of five numbers." The doctor also noted that Plaintiff's "intellectual capacity appears to be in the normal range." (TR 214). Dr. Rubin noted that although Plaintiff continues to take anti-depressant medication, "it would appear that there is some improvement in her symptoms of depression, enough so that she is able to at least become more involved with her church once again, where she does some minimal volunteer work and is studying the Bible." (TR 215). Dr. Rubin noted that Plaintiff was not receiving psychotherapy due to her lack of insurance and financial status. (TR 215). Dr. Rubin concluded that Plaintiff's Major Depression resulted from "the stresses of employment, including having to work in an understaffed, overworked position, struggling with physical symptoms related to injuries which occurred on the job, and feeling mistreated." (TR 215). The

doctor opined that the Major Depression "continues to interfere with her ability to resume active employment" and psychotropic medication should be continued and Plaintiff is in need of psychotherapy.  (TR 215).

The ALJ also pointed out that Dr. Shah reported Plaintiff's stream of mental activity as being slow and circumstantial, but also spontaneous and organized.  (TR 177).  Although Plaintiff reported talking to herself frequently and talking when watching the Oprah Winfrey show (being agreeable with the show), she denied hallucinations and Dr. Shah described her insight as "fair" and reported that she has "good" contact with reality.  (TR 177).  The ALJ also pointed out that Plaintiff volunteered at her church and was able to make small meals for herself.  (TR 21).

As Plaintiff and the ALJ pointed out, on November 20, 2007 Dr. Ellison completed the same Mental Residual Functional Capacity Assessment form as Dr. Rubin and concluded that Plaintiff is markedly limited in the ability to "perform activities within a schedule, maintain regular attendant, and be punctual within customary tolerances," and is markedly limited in the ability to "complete a normal work-day and work-week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."  (TR 21, 346).  Dr. Ellison noted that Plaintiff was "moderately limited" in all other areas of functioning. (TR 346).  Although the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, there is no evidence that Dr. Ellison's opinion with respect to Plaintiff's Mental Residual Functional Capacity is supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1527(d)(2). Dr. Ellison treated Plaintiff's complaints of depression with medication.  He is, however, identified in the record as practicing primary care medicine rather than being a psychiatrist, psychologist or

15

other mental health professional.  (TR 253); 20 C.F.R. § 404.1527(d)(2)(ii)(5).

The ALJ's finding that Plaintiff has only mild and moderate mental limitations is supported by substantial evidence.  The ALJ's findings are also consistent with the February 10, 2006 state agency consultant's Psychiatric Review Technique and the findings that Plaintiff has mild restrictions in activities of daily living, no difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace.  (TR 189-206).  The ALJ's RFC limiting Plaintiff to unskilled work that is simple and repetitive with routine tasks addresses the consultant's finding that Plaintiff has moderate limitations in the "ability to understand and remember detailed instructions" and the "ability to carry out detailed instructions" and the conclusion that "[s]he is able to do simple, sustained, unskilled tsks (sic) with persistence."  (TR 205).  The ALJ's findings with respect to Plaintiff's mental limitations are supported by substantial evidence.

### 3.    *Whether the ALJ's Findings With Respect To Plaintiff's Physical Impairments Are Supported By Substantial Evidence*

Plaintiff argues that the ALJ's findings with respect to her physical impairments are not supported by substantial evidence.  Plaintiff specifically argues that the ALJ erred in finding that she was not disabled by a limited ability to ambulate.  (Docket no. 11-2).  Plaintiff's argument also appears to rest on the premise that Plaintiff's ability to ambulate is accompanied by pain, which she alleges the ALJ discounted.   Plaintiff, however, has not challenged the ALJ's credibility determination so that issue is not before the Court[2].  The excerpts from the medical records on which Plaintiff relies do not, when taken in context, support a finding that Plaintiff is disabled as a result

---

[2] The Court notes that the ALJ's finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible is supported by the record and the ALJ adequately explained her findings.  (TR 20-22); 20 C.F.R. § 404.1529(c).

16

of severe pain or an inability to ambulate.  Plaintiff cites Dr. Newman's record of February 20, 2006 in which Dr. Newman noted that when walking on her heels, Plaintiff had "pain going up the back of both legs to the low back area.   She was able to walk on her toes *without complaints*."  (TR 209)(emphasis added).  Dr. Newman noted that Plaintiff had some swelling of the right knee and pain was "reproduced with medial and lateral torsion under the kneecap on the right."  (TR 209).  Dr. Newman noted that Plaintiff "has used a cane for ambulation," but there was no indication that she used an assistive device when she attended the examination.  (TR 209).  Dr. Newman noted that Plaintiff had taken a bus to his office for the examination.  (TR 209).  The ALJ cited extensively to Dr. Newman's report and correctly summarized Dr. Newman's findings that "despite [Plaintiff's] pain, she can still walk on her toes."  (TR 209).

Plaintiff also points out that Dr. Ellison's June 27, 2005 entry noted that Plaintiff was "unable to ambulate."  (TR 134).  The full Progress Notes from June 27, 2005 show that Plaintiff complained of left foot gout, which is what Dr. Ellison noted with respect to Plaintiff's inability to ambulate.  As the ALJ and Defendant point out, however, Plaintiff was able to return to work following this examination.

Despite Dr. Ellison's notation, an emergency room report from July 17, 2005 contains two separate notations that Plaintiff "is ambulatory," after she reported to the emergency room with complaints of back strain which resulted from moving a patient at work.  (TR 156-57).  The notes show that Plaintiff was "[m]oving all extremities with 5/5 strength" and had a "[n]ormal gait."  (TR 157).  An August 14, 2005 emergency room report shows that Plaintiff reported knee pain following a fall she had when "she was walking down some steps."  (TR 150).  The evidence does not show that Dr. Ellison's single notation that Plaintiff was "unable to ambulate" showed a lasting condition beyond the date of the notation.  Substantial evidence shows that Plaintiff was able to ambulate and

17

had a "normal gait" only twenty days later.  There is simply insufficient evidence in the record to support a finding that Plaintiff cannot ambulate or has disabling pain.  (TR 209).

Plaintiff argues that the ALJ's findings regarding Dr. Lutwin's opinion are not supported by substantial evidence.  (Docket no. 11-2).  The ALJ relied on Dr. Lutwin's notes to find that "[t]here is also strong evidence that the claimant has made considerable improvement since the report of Dr. Newman."  (TR 21).  Plaintiff argues that Dr. Lutwin's findings show that Plaintiff's symptoms are variable, not that they have improved.  (Docket no. 11-2). The ALJ correctly summarized Dr. Newman's February 20, 2006 findings that Plaintiff has a "restriction of motor of her dorsolumbar spine, lumbar spasms, and swelling in her right knee."  (TR 20, 209-10).  The ALJ noted that Dr. Newman "clearly establishes that the claimant has severe physical impairments in regards to her right knee and back."  (TR 21).

The ALJ then pointed out that on August 10, 2006 Dr. Lutwin noted that Plaintiff had a restriction of motion of the lumbar spine and "she is unable to bend and touch her toes, cross one leg over the other or bring her knees up to her chin."  (TR 21, 240).  Dr. Lutwin also noted that the right knee was within normal limits with "no restriction of motion in flexion and extension," and the left knee was "still tender to palpatation and restricted in flexion and extension."  (TR 240).  The ALJ correctly points out that on September 12, 2006, Dr. Lutwin noted the Plaintiff has "mild" restriction of motion of the lumbar spine and she was "able to bend and touch her toes, cross one leg over the other and bring her knees up to her chin."  (TR 235).  She also has "no restriction of motion in flexion and extension" of either knee.  (TR 235).  The doctor noted that Plaintiff reported that her physical therapy and medications were helping.  (TR 234).  The notes are substantial evidence supporting the ALJ's finding that Plaintiff has improvement since Dr. Newman's February 2006 report.

Plaintiff argues that because Dr. Lutwin continued to restrict Plaintiff's activities, the ALJ's finding of improvement is not supported by substantial evidence. Contrary to Plaintiff's argument, the record does not show that Dr. Lutwin "completely disabled" Plaintiff. (Docket no. 11-2). Dr. Lutwin's check box form specifically indicates that Plaintiff is disabled from November 10, 2006 to December 10, 2006 from the following activities:

> "Employment, which involves bending, lifting, twisting, and prolonged standing.
> 'Housework' and 'caring for the patient's children' which involves bending, lifting, twisting, and prolonged standing as required by changing children's clothes, bathing children, cooking for the children, feeding children, cleaning or straightening up after children. Cooking, etc. (sic).
> No driving due to physical limitations." (TR 229).

First, there is no indication that Dr. Lutwin extended these restrictions beyond December 10, 2006. Next, even if the restriction continued, the restrictions relating to bending and prolonged standing were included in ALJ's RFC[3] which restricts Plaintiff from frequent bending and prolonged standing. The RFC further limits Plaintiff to lifting no more than twenty pounds occasionally and ten pounds frequently. With respect to the twisting restriction, this restriction was not included in the ALJ's RFC as set forth in her decision, however, at the hearing the ALJ asked the VE to add to the hypothetical a restriction that the individual could not perform repetitive twisting of the torso.

---

[3] The ALJ concluded that Plaintiff has the RFC to perform a limited range of light work which is limited to the following:

> [U]nable to lift more than 20 pounds occasionally and 10 pounds frequently, needing a sit/stand option, no prolonged standing or walking, being unable to stand/walk more than six hours of an eight hour workday, no frequent bending, no stooping, kneeling, crouching, squatting, or crawling, no climbing ladders, scaffolds, or ropes, no frequent climbing of stairs or ramps, no frequent work with the general public. The work must be simple, repetitive or routine tasks (unskilled work) because of moderate limitations in her ability to maintain concentration for extended periods, and moderate limitations in the ability to understand, remember, and carry out detailed instructions. (TR 19-20).

19

(TR 378).  The VE testified that this limitation would not have an effect on the jobs which she identified.  (TR 378).  Therefore, any error with respect to a failure to include a twisting limitation is harmless.

To the extent that Plaintiff argues that the November 2006 restrictions  show that there was no improvement in Plaintiff's condition, Plaintiff's position is not clearly supported by the record.  These are check-box forms without further explanation.   The August and September 2006 restrictions applied to activities which involved "lifting, carrying, reaching, driving, typing or prolonged use of the upper limb(s)," extension of upper limbs, overhead movements and repetitive motion of the upper limbs. (TR 238. 246).  The activities in which Plaintiff is restricted from performing these motions were employment, housework, childcare and caring for her personal needs.  (TR 238, 246).  The restriction from caring for her personal needs is not mentioned on the October and November 2006 forms.  The Court cannot find that the November 2006 check box form is contrary to the ALJ's notation that Plaintiff exhibited improvement, where the ALJ pointed out that the doctor's detailed notes showed improvement.  The ALJ's findings regarding the extent of Plaintiff's physical impairments and resulting limitations is supported by substantial evidence.

### 4.      *Whether the ALJ Properly Considered Plaintiff's Ailments In Combination*

Finally, Plaintiff alleges that the ALJ failed to analyze Plaintiff's impairments in combination and revealed a bias by relying on evidence in the record which would "minimize [Plaintiff's] physical problems."  (Docket no. 11-2, pg. 18 of 20).  Plaintiff argues that the ALJ "did not even consider or analyze the fact that the claimant has severe physical problems that cause claimant's major depression."  (Docket no. 11-2).  Plaintiff relies on *Diaz v. Sec'y of Health & Human Servs.*, 791 F. Supp. 905 (D. P.R. 1992), for the following:

In determining whether an individual's physical or mental impairment or impairments

20

are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.  If the Secretary does find a medically severe combination of impairments, the combined effect of the impairments shall be considered throughout the disability determination process."  *Id*. at 911.

In *Diaz*, the ALJ found that the plaintiff has an emotional impairment that was a "severe impairment."  *Id.* At 912.  As the *Diaz* court pointed out, "[t]he rest of the ALJ's opinion merely summarizes his conclusions as to plaintiff's mental impairments with no further mention of physical impairments."  *Id.* at 912.  The *Diaz* court noted that it was clear that the ALJ "did not consider the severity of the emotional and physical impairments in combination" and the step three finding was not supported by substantial evidence.  *See id.* at 912.  Other than citing the *Diaz* case and the Social Security Disability Benefits Reform Act of 1984, Plaintiff has not briefed this issue, provided any analysis or application of this rule to the facts of her case, and has not otherwise identified a limitation or impairment not addressed by the ALJ to which this applies, other than to mention Plaintiff's mental impairments.  As set forth above, the ALJ extensively considered Plaintiff's mental impairments and her findings are supported by substantial evidence.  Unlike *Diaz,* the ALJ also considered Plaintiff's physical impairments and found that Plaintiff has both severe physical *and* mental impairments, although she found that singly or in combination they do not meet any of the listed impairments.  The ALJ then went on to consider Plaintiff's limitations which result from both the physical *and* mental impairments and included physical *and* mental limitations in the RFC.

Plaintiff also accuses the ALJ of revealing a "bias rather than her objective assessment." (Docket no. 11-2, pg. 18 of 20).  "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding."  *Phillips v. Sec'ty of Health & Human Servs.*, 812 F.2d 1407 (6th Cir. 1987).  If the Commissioner's decision is supported by substantial evidence, it must

be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her*, 203 F.3d at 389-90; *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

The ALJ's decision was supported by substantial evidence in the record and her findings were articulated in her decision. To the extent that Plaintiff purports to raise a claim of "bias" in her brief, she has failed to brief the issue, has not provided legal support for this accusation, has not properly raised the issue before the Court and the Court finds that such an allegation is completely unsupported by the record. "[P]ersonal aspersions, whether they be cast at opposing counsel or members of the judiciary, have no place in argument before us unless they are strictly pertinent to a legal issue, such as the imposition of Rule 11 sanctions or claims of judicial or prosecutorial misconduct." *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509, n.2 (6th Cir. 1991). The ALJ's decision was supported by substantial evidence[4].

## VI.    CONCLUSION

The ALJ's opinion is supported by substantial evidence and there is insufficient evidence in the record for the Court to find otherwise. Defendant's Motion for Summary Judgment (docket no. 16) should be GRANTED, that of Plaintiff (docket no. 11, 11-2) DENIED and the instant complaint dismissed.

## REVIEW OF REPORT AND RECOMMENDATION

---

[4]Although not raised in Plaintiff's motion and brief, the Court notes that the ALJ's hypothetical question to the VE incorporated Plaintiff's limitations which the ALJ found credible, supported by the record and included in Plaintiff's RFC. The ALJ met her burden at step five in finding that there are jobs which Plaintiff can perform in the economy.

22

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 30, 2009          s/ Mona K. Majzoub
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 30, 2009           s/ Lisa C. Bartlett
                                   Courtroom Deputy